UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TENNESSEE GAS PIPELINE COMPANY,
                        Plaintiff

v.                                                                  C.A. 05-10284-MEL

NEW ENGLAND POWER COMPANY, ET AL.
                        Defendants and Potentially
                        Interested Parties.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND PLAINTIFF'S MOTION  FOR ENTRY
AND POSSESSION

INTRODUCTION

Plaintiff, Tennessee Gas Pipeline Company ("Tennessee"), submits this Memorandum of

Law in support of its Motion for Partial Summary Judgment and its Motion for Entry and

Possession against the defendants and potentially interested parties identified in the Verified

Amended Complaint in Condemnation (the "Verified Amended Complaint").  Tennessee relies

upon the Verified Amended Complaint and the affidavits of Michael T. Morgan and Matt

Griswold, filed herewith, to provide the factual basis for this memorandum.

Tennessee's Motions should be allowed because, as described in more detail below, there

is (a) no genuine issue as to any material fact concerning Tennessee's right to take the requested

easements by eminent domain; (b) Tennessee and the public at large will suffer irreparable harm

if the motions are denied; (c) the harm to Tennessee and the public outweigh any theoretical

harm which the defendants and potentially interested parties may suffer if the requested relief is

granted, and (d) the public interest will be served by granting Tennessee's motion.

# 2666371_v1

Importantly, in <u>Tennessee Gas Pipeline Co. v. Massachusetts Bay Transportation Authority</u>, this Court granted summary judgment to Tennessee on the issue of its right to take by eminent domain property which was necessary to a pipeline project pursuant to 15 U.S.C. 717f(h).  <u>See</u> 2 F. Supp. 2d 106 (1998) (hereinafter referred to as <u>Tennessee I</u>).  The Court held that:  (1) Tennessee held a valid, final and binding Certificate from the Federal Energy Regulatory Commission (the "FERC") authorizing Tennessee to construct the pipeline project at issue; (2) collateral attacks on the validity of the FERC Certificate, including objections based on safety concerns, interference with property rights, public need or lack of proper notice, are not permissible in the District Court; (3) the Natural Gas Act, as implemented by the FERC, preempts all Massachusetts laws that would regulate natural gas "rates and facilities," and, finally, (4) Tennessee is entitled to summary judgment on the issue of its right to take by eminent domain any property necessary to the pipeline project.  <u>See id.</u> at 109-12; <u>see also</u> <u>Tennessee Gas Pipeline Co. v. New England Power, C.T.L., Inc.</u>, 6 F. Supp. 2d 102-06 (1998) (hereinafter referred to as <u>Tennessee II</u>)  (granting partial summary judgment in favor of Tennessee's right to take property by eminent domain and granting Tennessee's motion for immediate entry and possession of the subject property prior to the completion of condemnation proceedings).

I.   <u>STATEMENT OF THE CASE</u>

<u>The Tewksbury-Andover Lateral Project</u>

Tennessee is a natural gas transmission company primarily engaged in the business of transporting natural gas in interstate commerce, under authorization granted by and subject to the jurisdiction of the FERC.  (Verified Amended Complaint, ¶ 4).  Tennessee holds various Certificates of Public Convenience and Necessity issued by the FERC authorizing the construction, operation and maintenance of a natural gas pipeline transportation system used for

the interstate transportation of natural gas. (Verified Amended Complaint, ¶ 5). Tennessee's

main transmission system extends in a northeasterly direction from its primary source of supply

in Texas, Louisiana and the Gulf of Mexico through the states of Texas, Louisiana, Arkansas,

Mississippi, Alabama, Tennessee, Kentucky, West Virginia, Ohio, Pennsylvania, New York,

New Jersey, Connecticut, Rhode Island, Massachusetts and New Hampshire. (Verified

Amended Complaint, ¶ 6).

Tennessee is now preparing to construct facilities consisting of approximately 5.31 miles

of new 8-inch diameter high-pressure natural gas pipeline and appurtenant facilities (the

"Tewksbury-Andover Lateral Project") necessary to provide a new, non-interruptible source of

natural gas for the Wyeth-Genetic ("Wyeth") facility in the town of Andover. Approximately

1,200 linear feet of the Tewksbury-Andover Lateral Project is proposed for the town of Andover,

Massachusetts with the remainder located within the town of Tewksbury, Massachusetts.

(Verified Amended Complaint, ¶ 7). The Tewksbury-Andover Lateral Project begins at a

proposed interconnect with Tennessee's existing Concord Lateral in Tewksbury, and continues

east parallel to the Boston & Maine Railroad until reaching the National Grid (New England

Power & Massachusetts Electric) facility at which point the proposed route travels along the

utility corridor for approximately four (4) miles before turning toward the Wyeth property and

crossing the Shawsheen River and Route 93. (Verified Amended Complaint, ¶ 8).

<u>Certification by the FERC</u>

Tennessee is an interstate "natural gas company" within the meaning of Section 2(a) of

the Natural Gas Act ("NGA"), 15 U.S.C. § 717, <u>et</u>. <u>seq</u>. qualified to construct, own, operate and

maintain pipelines for the transmission of natural gas and its by-products. (Verified Amended

Complaint, ¶ 3). As a natural gas company, Tennessee is subject to the regulatory jurisdiction of

the FERC.  (Verified Amended Complaint, ¶ 4).  Under Section 7(c) of the NGA, 15 U.S.C.

§ 717f(c), Tennessee may construct facilities and transport natural gas in certain circumstances

only with the FERC's approval.  The FERC may approve a particular § 7(c) project only after

making a finding that the project is required by public convenience and necessity.  Such findings

are based upon an extensive review of the project and upon public proceedings in which affected

parties may participate fully.  (Affidavit of Michael T. Morgan, hereinafter "Morgan Aff.," ¶¶ 3-

4).

        Tennessee has applied for, received and is the holder of a Certificate of Public

Convenience and Necessity issued by the FERC on January 24, 2005 in docket number CP04-

60-000 (the "FERC Certificate"), which FERC Certificate was accepted by Tennessee on

February 10, 2005.  (Verified Amended Complaint, ¶ 9, Exhibit A).  The FERC Certificate

authorizes and obligates Tennessee to construct, install, operate, and maintain the Tewksbury-

Andover Lateral Project, as described above.  A copy of the planned route of the Tewksbury-

Andover Lateral Project, as approved by the FERC, is attached to the Verified Amended

Complaint as Exhibit B.  (Verified Amended Complaint, ¶ 10).

        In certifying the Tewksbury-Andover Lateral Project, the FERC stated:

> 33.    Based on the discussion above, we find that Tennessee's proposal
> for the Tewksbury-Andover Lateral is consistent with the criteria set forth in the
> Certificate Policy Statement.  Existing customers will not subsidize the project
> since it is fully subscribed and incremental rates will be charged.  The project will
> not result in a degradation of service for existing customers and will have no
> adverse effect on the captive customers of other pipelines, none of whom
> protested the project.  Finally, by routing most of the pipeline over existing right-
> of-way, Tennessee has minimized any adverse economic effects on landowners.

> 34.    In addition, Bay State, as a local distribution company, provides
> natural gas services to residential, community, and industrial customers.  The
> additional gas supplies it will receive from Tennessee's project will help Bay
> State meet the need for a second and incremental gate station off of Tennessee's
> pipeline to serve Bay State's Lawrence Division.  Tennessee states that this

additional delivery point will improve operating pressures in Bay State's Lawrence service area and help Bay State to better distribute gas supplies to heating and non-heating end-use customers. Higher operating pressures will also improve reliability on Bay State's system. Further, providing service to private companies like Wyeth is in the public interest because such entities provide jobs and generate tax income for local communities.

35.    For all of these reasons, we find that construction of Tennessee's proposed Tewksbury-Andover Lateral, as modified and conditioned herein, is required by the public convenience and necessity.

(Verified Amended Complaint, Exhibit A at 12).

Need and Authorization for Taking By Eminent Domain

The 5.31 mile route of the Tewksbury-Andover Lateral Project certified by the FERC runs through or adjacent to Massachusetts land owned by the defendants and the potentially interested parties (the "Properties") as described in Count I thru Count XVI and attached exhibits. (Verified Amended Complaint, ¶¶ 13 – 139. Exhibits C thru R). Consequently, to complete the Tewksbury-Andover Lateral Project, as approved and directed by the FERC, Tennessee needs permanent and temporary easements over the Properties. (Morgan Aff., ¶ 6). These requested easements are described in more detail on plans attached to the Verified Amended Complaint as Exhibits C thru R.

Tennessee has sought to obtain the necessary easements by negotiating with the defendants in good faith. (Morgan Aff., ¶¶ 10-12). Tennessee, at its own expense, had a Certified General Real Estate Appraiser appraise, individually or in conjunction with affiliated properties, the temporary and permanent easements and then offered to pay the defendants the full amount of the appraised value of the easements or more. The defendants, however, rejected Tennessee's offers of compensation. (Morgan Aff., ¶ 11). Despite its good faith efforts, Tennessee has been unable to reach a final agreement with the defendants as to either the form of

the easements or the amount of compensation and damages to be paid to them.[1]  (Morgan Aff., ¶ 12).

The Tewksbury-Andover Lateral Project cannot be constructed, as approved by the FERC, unless Tennessee acquires permanent and temporary easements over the Properties described in the Verified Amended Complaint.  These easements are necessary for constructing, maintaining, operating, altering, testing, replacing, repairing, abandoning and removing the FERC-certified Tewksbury-Andover Lateral Project.  A temporary easement is requested as of the date of the authorized entry onto the properties and continuing until twelve months after completion of construction or until all work, including restoration, is complete.  (Verified Amended Complaint, ¶ 11).  January 24, 2006 is Tennessee's deadline for placing the Tewksbury-Andover Lateral Project in service.  To meet this deadline, Tennessee must begin constructing this project during the summer of 2005.  (Verified Amended Complaint, ¶ 12, Morgan Aff., ¶ 15, Affidavit of Matt Griswold, hereinafter "Griswold Aff.," ¶¶ 3-4, 8).  Even before construction begins, Tennessee must special order materials, schedule and mobilize labor, and otherwise take costly and time consuming steps to keep a multi-million dollar construction project on schedule.  (Griswold Aff., ¶¶ 5-14).

Failure to complete construction in a timely manner will have adverse consequences for Wyeth and Tennessee.  (Morgan Aff., ¶¶ 14-15; Griswold Aff., ¶¶ 3-10).  Any delay in the completion of the Tewksbury-Andover Lateral Project will likely disrupt construction deadlines, budgets and service agreements already in place.  (Griswold Aff., ¶¶ 5-14).  Conversely, timely completion of the Tewksbury-Andover Lateral Project will help ensure that New England

---

[1]    Tennessee is willing to place a sum of money representing the appraised value of the land into a court account or post a bond as a condition of the requested relief.  (Morgan Aff., ¶ 13).

customers, including specifically Wyeth, will have an additional supply of natural gas.  (Morgan Aff., ¶ 14).

In light of the approaching service date, the FERC's construction deadline, the consequences facing Wyeth if the service date is not met, and the failure to reach voluntary agreements with the defendants, Tennessee now seeks to take the necessary easements by eminent domain.  Pursuant to Section 7(h) of the NGA, 15 U.S.C. § 717f(h), the FERC Certificate vests Tennessee with the federal power of eminent domain with respect to construction of the Tewksbury-Andover Lateral Project.  In accordance with this federal authority, Tennessee seeks the Court's authorization to take by eminent domain the permanent and temporary easements on the Properties.

SUMMARY JUDGMENT STANDARD

Summary judgment should enter where the moving party establishes that there is no genuine issue as to the essential elements of its claims and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

STANDARD FOR ENTRY AND POSSESSION

Tennessee seeks this Court's authorization to enter upon and possess the Properties prior to the entry of final judgment.[2]  The standards which apply to a request for entry and possession are essentially the same as the standards for a preliminary injunction.  A request for a preliminary injunction requires the court to weigh four factors: (a) whether the moving party has demonstrated a likelihood of success on the merits; (b) whether the moving party will suffer irreparable harm by denial of such relief; (c) whether granting preliminary relief will result in an

---

[2]    Pursuant to Fed. R. Civ. P. 71A(a), the Federal Rules of Civil Procedure govern eminent domain actions in federal court.  Therefore, this Court has authority to issue injunctive relief in this action under Fed. R. Civ. P. 65.

even greater harm to the non-moving party, and (d) whether granting preliminary relief will

adversely affect the public interest.  See, e.g., East Tennessee Natural Gas Co. v. Sage, 361 F. 3d

808, 828 (4th Cir. 2004); Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, 210 F. Supp. 2d

976, 979 (N.D. Ill. 2002) (hereinafter Guardian I); Northwest Pipeline Corp. v. The 20' x 1,430'

Pipeline Right of Way Easement 50' x 1560' Temp. Staging Area, 197 F. Supp. 2d 1241, 1246

(E.D. Wash. 2002); see also Asseo v. Pan American Grain Co., Inc, 805 F.2d 23, 26 (1st Cir.

1986); Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981);

Northern Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170, 172-73 (D.N.D. 1981)

(hereinafter Northern Border I). Tennessee satisfies these standards for immediate entry and

possession.

## II.  ARGUMENT

A.    There Is No Genuine Dispute As To Tennessee's Right To Take the
      Properties By Eminent Domain Because 15 U.S.C. § 717f(h) Expressly
      Authorizes The Taking By Eminent Domain of Easements Necessary To
      Complete FERC-Certificated Projects Such As the Tewksbury-Andover Lateral
      Project

Tennessee seeks to take easement interests in the Properties pursuant to Section 7(h) of

the NGA, 15 U.S.C. § 717f(h).  Section 717f(h) provides, in relevant part:

> When any holder of a certificate of public convenience and necessity cannot acquire by
> contract, or is unable to agree with the owner of property to the compensation to be paid for,
> the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the
> transportation of natural gas, and the necessary land or other property, in addition to right-of-
> way... it may acquire the same by the exercise of the right of eminent domain in the district
> court of the United States for the district in which such property may be located, or in the
> State Courts.

According to its terms, § 717f(h) applies when three conditions are present:  (1) a Certificate of

Public Convenience and Necessity authorizes the project, (2) the use of a particular parcel of

land is necessary to abide by the Certificate, and (3) a failure to agree on the amount of

compensation due the owner of the land at issue.  See 15 U.S.C. § 717f(h); Tennessee II, 6

F. Supp.2d at 104.  Here, there is no genuine dispute that all three conditions are present.

First, the defendants and potentially interested parties cannot dispute that Tennessee

holds a valid, final and binding FERC Certificate.  Furthermore, as acknowledged by this Court,

the issuance of the FERC Certificate and the findings of FERC expressed therein may not be

challenged collaterally in this action.  See Kansas Pipeline Co. v. A 200 Foot by 250 Foot Piece

of Land Located in Section 6, Southwest Quarter, Township 32 South, Range 10 West, County

of Barber, State of Kansas, 210 F. Supp. 2d 1253, 1255-56 (D. Kan. 2002); Guardian Pipeline,

L.L.C. v. 529.42 Acres of Land, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002) (hereinafter Guardian

II); Tennessee I, 2 F. Supp. 2d at 109-11; see also City of Tacoma v. Taxpayers of Tacoma, 357

U.S. 320, 335-340 (1958) (Federal Power Commission license to municipal corporation for

water power project may not be attacked in eminent domain proceeding arising under the Federal

Power Act ("FPA"), 16 U.S.C. § 814); Tennessee Gas Pipeline Co. v. 104 Acres of Land, More

or Less, 749 F. Supp. 427, 430 (D.R.I. 1990) (FERC Certificate can be challenged only by

rehearing/appeal of FERC Order; landowner may not challenge FERC Certificate in eminent

domain action arising under NGA); Kern River Gas Transmission Co. v. Clark Cty., Nev., 757 F.

Supp. 1110, 1116 (D. Nev. 1990) (same); Rivers Elec. Co., Inc. v. 4.6 Acres of Land, 731 F.

Supp. 83, 86-87 (N.D.N.Y. 1990) (eminent domain action is improper forum for challenging

FERC's license to electrical utility to build hydroelectric project under the FPA).[3]  In short, the

defendants and potentially interested parties may not block this eminent domain action by

attacking the FERC Certificate.  See id.

---

[3]     As to the applicability of cases decided under the FPA to cases governed by the NGA, the Supreme
Court has stated that due to the common origin of the two statutes, similar provisions should be construed in
similar fashion.  Arkansas La. Gas Co. v. Hall, 453 U.S. 571, 578 n. 7 (1981).

Similarly, no Massachusetts law can block the operation of the FERC Certificate. As correctly noted by this Court, the rule against collateral attacks on a FERC Certificate "is grounded in Congress's having vested in FERC exclusive jurisdiction over the regulation of the transport and sale of natural gas in interstate commerce." See Tennessee I, 2 F. Supp. 2d at 110-11. Moreover, it is indisputable that the NGA "occupies the field" with respect to the regulation of natural gas "rates and facilities." See id. Therefore, any Massachusetts law which conflicts or interferes with the operation of the NGA through the FERC Certificate must be preempted. See id.

Second, the FERC has already approved the route for the construction and maintenance of the Tewksbury-Andover Lateral Project. The FERC specifically found that the Tewksbury-Andover Lateral Project, including the proposed route over the Properties, was "required by the public convenience and necessity." This decision, as noted above, may not be attacked collaterally. Therefore, the defendants and the potentially interested parties have no standing at this stage to challenge a determination by the FERC (and Tennessee) that the requested easements are necessary to the successful completion of the Tewksbury-Andover Lateral Project. See Tennessee I, 2 F. Supp. 2d at 110-11; Verified Amended Complaint, Exhibit A, at 12.

Third, there can be no question that Tennessee has negotiated in good faith with the defendants in an attempt to agree on fair compensation for the requested easements. A good faith attempt to acquire property rights by agreement prior to commencing condemnation proceedings may be established by an affidavit signed by a representative of the acquiring party who was responsible for the negotiations. See, e.g., Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land, 745 F. Supp. 366, 369-70 (E.D. La. 1990). In Transcontinental, the Court held that, through an affidavit signed by its land representative, the condemnor natural gas pipeline

company demonstrated that it had engaged in good faith negotiations with the owners of the land

that the pipeline company sought to condemn. In his affidavit, the land representative stated that

he negotiated with the landowners (communicating with each at least two times), that he made an

offer for the easement equal to or greater than the appraised value as determined by the

pipeline's appraiser, that he failed to negotiate an agreed upon price with the landowners and

thus could not acquire the easements by contract, and had concluded that further negotiations

would be futile. Id.; see also Guardian II, 210 F. Supp. 2d at 975 ("The objection raised by

some landowners that plaintiff has not negotiated in good faith is adequately answered by the

Declaration of Thomas C. Davis, describing the efforts made to negotiate easement agreements,

and by his Supplemental Declaration describing the efforts made to negotiate . . . with specific

landowners."); USG Pipeline Co. v. 1.74 Acres in Marion County, Tenn., 1 F. Supp. 2d 816,

822-25 (E.D. Tenn. 1998) (holding that good faith negotiations occurred where the pipeline

company made reasonable efforts to ascertain local land values and made monetary offers that it

considered reasonable in a good faith effort to acquire the easements over the course of several

months); Kern River, 757 F. Supp. at 1113-14 (holding that good faith negotiations occurred

where the parties had engaged in discussions for several months, and noting that the pipeline

company had made certain concessions).[4]

---

[4] Although, as stated above, some federal courts have imposed a good faith negotiation requirement, other courts have called such a requirement into question. See Kansas Pipeline, 210 F. Supp. 2d at 1257 ("The plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith . . . [t]he statute only requires that the party seeking to condemn be unable to acquire the property by contract or unable to agree on compensation to be paid for the property. The court declines to demand more than the statute requires . . . ."); Guardian II, 210 F. Supp. 2d at 974 ("One is a judicial gloss that the holder must engage in good faith negotiations with the landowner before it can invoke the power of eminent domain . . . although the statutes have no such specific requirement and we are unaware of any case in which condemnation has been denied or even delayed because of an alleged failure to engage in good faith negotiations."). Thus, under this interpretation, Tennessee has satisfied this element as it has made offers to the defendants to purchase the required easements, which have been rejected. See Kansas Pipeline, 210 F. Supp. 2d at 1258 (holding that the statutory requirement that the pipeline company be unable to agree with the owner on compensations was satisfied as the pipeline company made offers to renew the lease agreement and to purchase the property, which were both rejected).

The Affidavit of Michael T. Morgan, the representative of Tennessee responsible for overseeing the right-of-way negotiations with the defendants, describes the efforts which Tennessee has expended and the lengths to which it has gone in attempting to negotiate voluntary easements. Tennessee has written to, met with and had multiple telephone calls with the defendants or their agents. Moreover, Tennessee, at its own expense, had a Certified General Real Estate Appraiser appraise, individually or in conjunction with affiliated properties, the temporary and permanent easements it seeks and offered to pay the defendants the full value of the easements, as determined by Tennessee's appraiser, or more. (Morgan Aff., ¶¶ 10-11). Such actions clearly establish good faith negotiations within the meaning of the NGA.

Finally, Tennessee notes that this Court as well as courts in other jurisdictions have granted summary judgment on the right of pipeline companies to take requested easements by eminent domain when the above identified elements have been met. See Tennessee II, 6 F. Supp. 2d at 104 ("Because I find that Tennessee meets the statutory requirements for the proposed taking by (1) holding a valid FERC Certificate . . . (2) seeking land that is necessary to the project, and (3) having failed to settle with a relevant property holder despite good faith negotiations, the Motion for Partial Summary Judgment is granted . . . ."); Tennessee I, 2 F. Supp. 2d at 108-12; (granting Tennessee's summary judgment motion concerning the right to take by eminent domain the requested properties); see also Northwest, 197 F. Supp. 2d at 1243 ("The Douglasses concede that Northwest is entitled to an easement under the Natural Gas Act . . . [t]herefore, Northwest's motion for summary judgment . . . is granted."). Thus, this Court should grant Tennessee's motion for partial summary judgment.

B.    Tennessee Has Established Its Right to Easements on the Properties and Is
Entitled to Entry And Possession Prior to the Calculation of Compensation
As It Does Not Have An Adequate Remedy At Law

If this Court does not allow Tennessee to enter upon and possess the land at issue,

Tennessee will not be able to adhere to its construction schedule and will not be able to complete

this FERC-certificated project as required by FERC's order. (Morgan Aff., ¶¶ 14-15; Griswold

Aff., ¶¶ 3-14). There is no Massachusetts or federal statute providing for such prejudgment entry

and possession. See East Tennessee, 361 F.3d at 820-23; Tennessee II, 6 F. Supp. 2d at 104-06.

However, federal courts have used their equitable powers to grant entry and possession of

easements prior to the conclusion of condemnation proceedings, including the determination of

compensation, after the moving party has established a right to condemn and after establishing

that it is entitled to equitable relief. See, e.g., East Tennessee, 361 F.3d at 823-31; Northwest,

197 F. Supp. 2d at 1243-46; Tennessee II, 6 F. Supp. 2d at 104-06; see also Northern Border I,

520 F. Supp. at 171-73 (allowing immediate possession where the plaintiff would suffer

economic harm from delay, national interest supported immediate possession, and "[t]he only

legal remedy available to the plaintiff is the condemnation proceeding itself, which under the

circumstances of this case, is inadequate.").

Specifically, federal courts have held that it is appropriate to grant holders of FERC

Certificates immediate possession of land when the only outstanding issue to be resolved is the

amount of just compensation for the easements at issue. See East Tennessee, 361 F.3d at 818,

823-31 (affirming district court's rulings that a gas company can obtain immediate possession of

easements through a preliminary injunction before just compensation is determined or paid in a

condemnation action once its right to condemn the easements is established); Guardian I, 210 F.

Supp. 2d at 977-79 (allowing the plaintiff's motion for immediate possession where the only

issue remaining for adjudication was the just compensation for the tracts of land at issue); Northwest, 197 F. Supp. 2d at 1243-46 (granting motion for immediate possession after granting summary judgment establishing pipeline company's right to easement in question before just compensation was determined); Tennessee II, 6 F. Supp. 2d at 104-06 (allowing motion for immediate possession stating that "C.T.L. is incorrect that this Court does not have authority to grant a right of immediate entry prior to the completion of condemnation proceedings.").

In Northwest, the court explicitly rejected the approach articulated in Northern Border Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469 (7th Cir. 1998) ("Northern Border II") that a pipeline company is not entitled to immediate possession until the conclusion of the eminent domain process. See 197 F. Supp. 2d at 1244-45. The Court specifically recognized that such an interpretation "is at odds with these [preliminary injunction] standards inasmuch as it would require the plaintiff not to show a *likelihood* of success but rather to have *already* succeeded on the merits of its claimed right of condemnation." See id. at 1245. The court stated that adopting this approach would "vitiate" the preliminary injunction standard and "would produce an absurd result" as "there is no dispute about the validity of Northwest's actual right to the easement and the defendants have made no showing that they will be prejudiced by immediate possession . . . ." See id.

Like the Court in Northern Border I, this Court should recognize that an interstate natural gas company exercising the federal power of eminent domain without the benefit of a statute authorizing prejudgment entry and possession lacks an adequate remedy at law for the purposes of meeting construction schedules approved by FERC under the NGA. 520 F. Supp. at 172-73; see also East Tennessee, 361 F.3d at 823 ("However, when a substantive right exists, an equitable remedy may be fashioned to give effect to that right if the prescribed legal remedies are

inadequate . . . [t]he district court followed these principles when it granted ETNG equitable

relief in the form of a preliminary injunction that allowed the company to take early possession

of the condemned property.")

     C.     Tennessee and the General Public Will be Irreparably Injured By the Denial of the
Requested Relief

     If Tennessee's pipeline is not operational by January 2006, Tennessee will not be able to

meet the firm requirements of FERC Certificate, and Tennessee and the general public will

suffer.[5]  The FERC has set January 24, 2006 as Tennessee's deadline for completing the

Tewksbury-Andover Lateral Project.  (Verified Amended Complaint, ¶ 12).  Tennessee must

begin constructing the Tewksbury-Andover Lateral Project during the summer of 2005 to meet

the FERC deadline.  (Verified Amended Complaint, ¶ 12; Griswold Aff., ¶ 4, 8).

     The size and complexity of this project requires planning months and years in advance.

Indeed, Tennessee has already committed approximately $3,175,000.00 in preparation for

construction.  (Griswold Aff., ¶ 5).  The pipe alone costs approximately $210,000.00 dollars and

was specially ordered.  (Griswold Aff., ¶ 6).  Tennessee has also ordered almost all the remaining

materials for the project, including, among other things, materials for a meter station and tap

facilities.  These materials cost $260,000.00 and Tennessee will soon commit an additional

$100,000.00 for the remaining materials.  (Griswold Aff., ¶ 7).

     To meet the January 2006 construction deadline, Tennessee requires immediate access to

the Properties to conduct construction preparation in accordance with the FERC Certificate, the

standard practices at Tennessee and in the industry generally.  The FERC Certificate obligates

Tennessee to certify that it is complying with certain environmental conditions.  Accordingly,

Tennessee must have access to the Properties to allow environmental inspectors to ensure that

---

[5]    The harm to the general public is discussed below in Section E.

the FERC-required environmental conditions are met. (Griswold Aff., ¶¶ 9-12). In addition, it is necessary for Tennessee to have various other inspectors (e.g., utility, welding, coatings and blasting inspectors) conduct on-site inspections prior to and during construction. (Griswold Aff., ¶ 13). Prior to construction, it is also standard practice for Tennessee to stake off the work area boundaries, exclusion areas, required setbacks and other designated areas at the site. (Griswold Aff., ¶ 11). Consequently, denying the requested injunctive relief will derail this already tight construction schedule, causing Tennessee substantial delays and further expense.

In such circumstances, Tennessee must be permitted to enter upon and possess the Properties immediately and prior to entry of final judgment, so that Tennessee can begin constructing its pipeline by the summer of 2005. See East Tennessee, 361 F.3d at 828-29, 831 (upholding the district court's order granting immediate possession to the pipeline company, in part, where the company demonstrated that denial of immediate possession could force it to suffer harm such as forcing it to breach the FERC deadline and suffer economic harm due to construction delays); Northwest, 197 F. Supp. 2d at 1246 (concluding that the pipeline company had shown a likelihood of irreparable harm, including harm to its economic position as well as evidence that the such a delay would harm interests connected to the City of Spokane); Tennessee II, 6 F. Supp. 2d at 104 ("the district court does have the equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule . . . [h]ere Tennessee has adequately established that waiting any longer to occupy the G.E. site could well preclude it from meeting the FERC-imposed December deadline for completion of construction."); Kern River, 757 F. Supp. at 1115-17, 1120 (allowing immediate entry upon payment of sum of money into court, so that pipeline company could "meet complex contractual and logistical obligations to its customers" and maintain its budget); Northern Border

I, 520 F. Supp. at 172-73 (granting immediate possession to pipeline company where company demonstrated that possession was critical to adhere to construction deadlines and maintaining budget).

D.    Granting the Requested Relief Will Not Harm The Defendants or the Potentially Interested Parties.[6]

First, the threat to the environment is minimal.  The FERC Certificate obligates Tennessee to take specific remedial measures and to comply with the strict environmental guidelines which the FERC established after publishing a comprehensive environmental assessment report and after considering objections and recommendations from several intervening parties.  Verified Amended Complaint, Exhibit A at 14-17, 19-24.  See No Tanks Inc. v. Public Utilities Comm'n, 697 A.2d 1313, 1315 (Me. 1997) (FERC applications "must include environmental impact information pursuant to 18 C.F.R. § 157.14(a)(6-d)(1996), and a certification of compliance with the applicable standards pursuant to 49 U.S.C. § 60104(d)(2)(1994)").

Second, as noted above, the defendants will be compensated monetarily, under Court supervision, during the portion of this action in which compensation to such landowners for the taking and for any damages is determined.  Tennessee is also willing to place a sum of money representing the appraised value of the land into a Court account or post a bond as a condition of the requested relief.  (Morgan Aff., ¶ 13).  Thus, no harm will come to the defendants if the requested relief is granted.  See East Tennessee, 361 F.3d at 826, 829 (stating that any harm to the defendants would be blunted, in part, by the landowners' right to draw down money

---

[6]    In setting forth the standard for the allowance of a Motion for Immediate Entry, the Northern Border I court did not require that the person exercising the federal power of eminent domain show that the harm to such person outweighed the harm to the landowners.  Nevertheless, Tennessee notes that there is no harm to the defendants if these motions are allowed.

deposited with the court by the pipeline company); <u>Northwest</u>, 197 F. Supp. 2d at 1246 ("The

defendants have put forward no evidence indicating that they will suffer any damages from

immediate relocation of the gas pipeline. Even if damages accrue to the defendants from

immediate possession, the defendants's interests will be protected by Northwest's posting a bond

or deposit of a money for future compensation.").

      E.    <u>The Public Interest Will Be Served</u>

As set forth more particularly in the FERC Certificate and the Morgan Affidavit,

allowance of the requested relief will serve the public convenience and necessity and hence the

public interest. Moreover, timely completion of the Tewksbury-Andover Lateral Project will

help to ensure that New England customers including Wyeth will have an additional supply of

natural gas. (Morgan Aff., ¶¶ 14). <u>See</u> <u>East Tennessee</u>, 361 F.3d at 830 ("As the district court

observed, FERC conducted a careful analysis of the Patriot Project and determined that the

project will promote these congressional goals and serve the public interest . . . [t]his will make

gas available to consumers, and it will help in the efforts of local communities to attract much-

needed new business.").

III.  <u>CONCLUSION</u>

For the foregoing reasons and upon the authorities cited, the Court should grant

Tennessee's Motion for Partial Summary Judgment and its Motion for Entry and Possession.

Respectfully submitted,

TENNESSEE GAS PIPELINE COMPANY

By its Attorneys,

HOLLAND & KNIGHT LLP

_____/s/ Harold W. Potter, Jr._____
Harold W. Potter, Jr. (BBO # 404240)
Dianne R. Phillips (BBO # 552982)
Jennifer L. Antoniazzi (BBO #654653)
10 St. James Avenue
Boston, MA  02116
(617) 523-2700

CERTIFICATE OF SERVICE

I, Harold W. Potter, Jr., hereby certify that on April 4, 2005, I have served the within

document by mailing postage prepaid via first class mail to the parties listed on the attached

Service List.

                                                             /s/ Harold W. Potter, Jr.
                                                             Harold W. Potter, Jr.

Dated:  April 4, 2005

# 2666371_v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TENNESSEE GAS PIPELINE COMPANY,<br><br>                Plaintiff,<br><br>vs.<br><br>NEW ENGLAND POWER COMPANY et al.<br><br>     Defendants and Potentially<br>       Interested Parties. | C.A. 05-10284-MEL |

## SERVICE LIST

| | |
|---|---|
| Celia B. O'Brien, Esq.,<br>National Grid, U.S.A., Legal Department<br>25 Research Drive<br>Westborough, MA 01582<br><br>Counsel for:<br>New England Power Company and<br>Massachusetts Electric Company<br><br>And<br><br>Vincent F. O'Rourke, Esq.<br>Bowditch & Dewey<br>311 Main Street<br>Worcester, MA 01615 | John R. Maciolek, Esq.<br>Berg & Laipson<br>34 Mechanic Street<br>Worcester, MA 01608<br><br>Counsel for:<br>Ellen A. Sexton, Donald C. Power and Donna J. Power, Thomas J. Kachoris and Elizabeth M. Kachoris, Said Abuzahra, Trustee of Two S Realty Trust, John J. McDevitt, Jr., Kevin P. McDevitt, Brian G. McDevitt, Dennis C. McDevitt and Michael W. McDevitt, Judith Wein and Paul Woods, Trustees of JW South Street Realty Trust, Brian and Allyson Gangemi, Richard D. Bramante, Elizabeth A. Kelly, James Andella, Trustee of J.D.B. Trust, Holly C. Sughrue and Richard J. Sughrue, III |
| Eustachio P. Simone<br>Pro Se<br>245 Lancaster Drive<br>Tewksbury, MA 01876 | Michael A. Gerstein, Esq.<br>Lora M. McSherry, Esq.<br>Phillips, Gerstein, Holber & Channen LLP<br>25 Kenoza Avenue<br>Haverill, MA 01830<br><br><br>Counsel for:<br>Armindo G. Dias and Sara Lou Dias |

| Robert B. Cullerford, Esq.<br>Iron Horse Park<br>High Street<br>North Billerica, MA  01862<br><br>Counsel for:<br>Boston & Maine Corporation | Richard P. Owens, Esq.<br>Verizon<br>185 Franklin Street, 13th Floor<br>Boston, MA  02110-1585<br><br>Counsel for:<br>Verizon New England, Inc |
|---|---|

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TENNESSEE GAS PIPELINE COMPANY,
            Plaintiff

v.                                                          C.A. 05-10284-MEL

NEW ENGLAND POWER COMPANY, et al.,
                        Defendants and Potentially
                        Interested Parties.

AFFIDAVIT OF MATT GRISWOLD

I, Matt Griswold, do hereby depose and say:

1.      I am currently employed by Tennessee Gas Pipeline Company ("Tennessee") as

Project Engineer/Manager and, in that capacity, I am familiar with and personally involved in

coordinating and directing the design and construction of the Tewksbury-Andover Lateral

Project authorized by order of the Federal Energy Regulatory Commission, dated January 24,

2005, in Docket No. CP04-60-000 (the "FERC Certificate").

2.      I have personal knowledge of the facts set forth in this affidavit.

3.      The FERC Certificate authorizes and obligates Tennessee to construct, operate,

and maintain the Tewksbury-Andover Lateral Project.  To meet these objectives, Tennessee must

have the Tewksbury-Andover Lateral Project in service as soon as practicable but in no event

later than January 24, 2006.

4.      To meet the project schedule, Tennessee must begin construction during the

summer of 2005.  Construction of the pipeline, including the pre-construction activities described

- 1 -

herein, the actual construction of the pipeline itself and initial restoration is estimated to take eight to ten weeks.

5.     The construction of a natural gas pipeline is a large, complex and expensive construction project.  Tennessee has already committed approximately $3,175,000.00 in preparation for construction.

6.     The pipe alone cost approximately $210,000.00 and must be specially ordered. Tennessee issued a purchase order for the pipe in 2004, and production of the pipe is now complete and in stock.

7.     Tennessee has also ordered almost all the materials for the meter station and tap facilities.  These materials cost $260,000.00 and Tennessee will soon commit an additional $100,000 for the remaining material.

8.     In preparation for providing services in the fall of 2005, Tennessee is mobilizing for a start to construction as soon after June 1, 2005 as possible.

9.     Tennessee requires access to the defendants' and potentially interested parties' properties (the "Properties") to conduct construction preparation in accordance with the FERC Certificate, the standard practices at Tennessee and in the industry generally.

10.     Once Tennessee has possession of the Properties, it will take between two to four weeks for the selected contractor to mobilize to begin the work described herein.   It is impracticable to begin mobilization until Tennessee has the Properties necessary for construction.

11.     It is standard practice for Tennessee to stake off the work area boundaries, exclusion areas, required setbacks and other designated areas at the site prior to construction.

12.     The FERC Certificate obligates Tennessee to certify that it is complying with certain environmental conditions.  Accordingly, Tennessee must have access to the Properties to allow environmental inspectors to ensure that the FERC-required environmental conditions are met.

13.     In addition, it is necessary for Tennessee to have various other inspectors (e.g., utility, welding, coatings and blasting inspectors) conduct on-site inspections during construction and prior to construction.

14.     As a result of these necessary actions and preparations, Tennessee seeks access as soon after June 1, 2005 as possible to conduct these activities in preparation for construction as well as to conduct the actual construction of the pipeline.


Signed under the pains and penalties of perjury this 1st day of APRIL, 2005.

Matt Griswold

# 2703688_v1

- 3 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TENNESSEE GAS PIPELINE COMPANY,
                    Plaintiff,

        v.                                                          C.A. 05-10284-MEL

NEW ENGLAND POWER COMPANY ET AL.
                    Defendants, and Potentially
                    Interested Parties.

AFFIDAVIT OF MICHAEL T. MORGAN

I, Michael T. Morgan, do hereby depose and say:

1.      I am the Supervisor of Property Rights Services for Tennessee Gas Pipeline

Company ("Tennessee"), and I have personal knowledge of the facts stated herein.

2.      I am responsible for overseeing the negotiating and acquiring of rights-of-way for

Tennessee and for the Tewksbury-Andover Lateral Project.

3.      Tennessee may construct facilities and transport natural gas pursuant to section

7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c) only with the approval of the Federal Energy

Regulatory Commission ("FERC").

4.      The FERC may approve a § 7(c) project only after making a finding that the

project is required by public convenience and necessity.  Such findings are based upon an

extensive review of the project, and upon public proceedings in which affected parties may

participate fully.

5.      Tennessee has applied for, received and is the holder of a Certificate of Public

Convenience and Necessity issued by the FERC on January 24, 2005 in Docket No. CP04-60-

000 (the "Certificate") for 5.31 miles of new 8-inch, high pressure natural gas pipeline and

- 1 -

appurtenant facilities necessary to provide a new, non-interruptible source of natural gas for the Wyeth-Genetic facility in the town of Andover. Approximately 1,200 linear feet of the Tewksbury-Andover Lateral Project is proposed for the town of Andover, Massachusetts with the remainder located within the town of Tewksbury, Massachusetts.

6.     The defendants own property along the route of the Tewksbury-Andover Lateral Project (the "Properties"). Tennessee needs permanent and temporary easements over and across the Properties to construct, operate, maintain, alter, replace, repair, abandon and/or remove this FERC-certificated pipeline. The Properties are described in detail in Count I through Count XVI of the Verified Amended Complaint.

7.     Each of the defendants was given actual notice when Tennessee applied for its Certificate of Public Convenience and Necessity in Docket No. CP04-60-000. Notice of the filing was provided pursuant to federal regulation. Several of the defendants, in response to the notice, participated in the FERC proceedings, some simply by writing letters to FERC raising concerns.

8.     Specifically, Two S Realty Trust, Thomas J. and Elizabeth Kachoris, J.W. South Realty Trust, Donald C. and Donna J. Powers, Armindo G. Dias, New England Power Company and Massachusetts Electric Company, all addressed various concerns to the FERC, including the location of the route, the alleged diminution in value to their properties and concerns about safety.

9.     The FERC addressed their concerns in its Order and granted Tennessee's request to build the route as proposed.

10.    Tennessee has written to, met with and had multiple telephone calls and conferences with the defendants or their agents in an effort to negotiate terms for the granting of

the necessary easements to Tennessee.  Tennessee and the defendants have been unable to reach agreement.

11.     Tennessee, at its own expense, had a Certified General Real Estate Appraiser appraise, individually or in conjunction with affiliated properties, the permanent and temporary easements it seeks on the Properties.  Tennessee has offered to compensate the defendants by paying the full appraised value of the requested easements or more.  The defendants, however, rejected those offers.

12.     Despite these good faith efforts, Tennessee has been unable to reach a final agreement with the defendants as to either the form of the easements or the amount of compensation and damages.

13.     Tennessee is willing to place a sum of money representing the appraised value of the land into a court account or post a bond in that amount as a condition of the requested relief.

14.     The Tewksbury-Andover Lateral Project will provide an additional supply of natural gas for New England customers, including specifically Wyeth-Genetic.

15.     January 24, 2006 is Tennessee's deadline for placing the Tewksbury-Andover Lateral Project in service.  To meet this deadline, Tennessee must begin constructing this project as soon as possible after June 1, 2005.

16.     As determined by the FERC, allowance of the requested relief will serve the public convenience and necessity and hence the public interest.

Signed under the pains and penalties of perjury as of this _1st_ day of _April_, 2005.

_Michael T. Morgan_
Michael T. Morgan

# 2703696_v1